# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. |
| ) | 5:22-cr-3-DCR-MAS |
| v. ) | and |
| ) | Civil Action No. |
| DONALD WOODROE KISER, III, ) | 5:22-cv-310-DCR-MAS |
| ) | |
| Defendant/Movant. ) | |

### REPORT & RECOMMENDATION

This matter is before the undersigned on Petitioner Donald Woodroe Kiser, III's ("Kiser") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. [DE 81].[1] Kiser raises several grounds based upon claims of ineffective assistance of counsel. The United States responded in opposition [DE 60]. Kiser did not file a reply. After thoroughly reviewing the record in its entirety, the Court recommends Kiser's petition be denied.

### I. RELEVANT FACTUAL BACKGROUND

On August 3, 2021, a criminal complaint against Kiser issued alleging that Kiser produced and possessed child sexual abuse materials in violation of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252(a)(4)(B), respectively. [DE 1]. On January 6th, 2022, the grand jury indicted Kiser on those same charges. The summary of the allegations against Kiser, per his plea agreement, is as follows:

> On March 3, 2021, [Lexington Police Department] executed a state search warrant at KISER'S residence, which resulted in the seizure of numerous electronic items of evidentiary value. … KISER'S HP laptop computer, which was seized during the search warrant at his residence, was forensically examined by LPD. Over 500 images and videos of suspected CSAM were located on the HP laptop.

---

[1] Record citations reference the underlying criminal docket.

1

> On May 19, 2021, law enforcement located several images and videos on KISER'S HP laptop that depict KISER sexually abusing [victim 1 ("V1")], a minor victim then living in the same household as KISER, on multiple different occasions. One series of images that depicted the abuse of V1 contained 42 images. … Metadata from multiple images in this series revealed that these images were produced on or about 12/28/18, when V1 would have been 8 years-old, in Lexington, Kentucky, in the Eastern District of Kentucky.

[DE 25, Page ID# 66-67].

By April 2022, Kiser elected to plead guilty to Count 1, the production charge in violation of 18 U.S.C. § 2251(a). [DE 24, 25]. After reviewing the presentencing investigation report ("PSIR") and hearing fulsome arguments from the parties about the possible consequences, the Court entered judgment against Kiser sentencing him to 360 months of imprisonment with 25 years of supervised release to follow. [DE 38, 40].

After timely filing an appeal to the Sixth Circuit, the appeal was later dismissed on November 28, 2022, due to Kiser's failure to prosecute it. [DE 48]. Before the Sixth Circuit entered its order dismissing his appeal, Kiser endorsed his habeas petition on August 1, 2022, and it was later received by this Court on December 19, 2022.[2] The petition is timely.

## II. ANALYSIS

In his petition, Kiser has presented three different grounds for habeas relief, all couched as ineffective assistance of his trial counsel, Brad Clark ("Clark"). Kiser alleges that (1) Clark failed to challenge the "vulnerable victim" sentencing enhancement; (2) Clark failed to challenge the

---

[2] Kiser's § 2255 motion is deemed filed on the date it was signed. *See Brand v. Moley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that, under the prison mailbox rule, a pro se prisoner's pleading is deemed filed when it is handed over to prison officials for mailing to the court, which the court assumes occurs on the date the prisoner signed the pleading, absent contrary evidence). The result of the prison mailbox rule in this case is that technically, Kiser's motion was filed prior to the dismissal of his appeal. Ordinarily the Court will not consider a § 2255 motion in that instance. However, because this Court did not receive it until after the dismissal of his direct appeal, and because the United States did not raise the issue (as it had no reason to) an overly technical reading of that rule serves no purpose here.

"caretaker" sentencing enhancement, including failing to call the victim's mother as a witness in support that Kiser was not a caretaker of the victim; and (3) Clark failed to request a downward variance from the Court.

As explained below, for each of these grounds, the record demonstrates that Clark did, in fact, make these arguments, albeit unsuccessfully. Simply because counsel was unsuccessful does not mean Kiser can establish a claim for habeas relief. Consequently, the undersigned recommends the Court deny Kiser's petition.

A.   LEGAL STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'") (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

One class of alleged constitutional error is ineffective assistance of counsel in violation of the Sixth Amendment. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of

reasonableness." *Id*. at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential[,]" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id*. at 695. The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

**B.**     **VULNERABLE VICTIM ENHANCEMENT**

Based upon the relevant conduct of the offense, the PSIR included a two-level sentencing enhancement under United States Sentencing Guideline ("USSG") § 3E1.1(b)(1) as the crime involved a vulnerable victim. [DE 46, Page ID# 324]. The specific USSG provision requires such an enhancement if the Court finds "the defendant knew or should have known that a victim of the offense was a vulnerable victim." A vulnerable victim is defined as "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." USSG § 3E1.1(b)(1), Application Note 2 (2018). When Kiser committed the offense, the victim who was the target of the crime was eight years old and was asleep in the bed. [DE 46, Page ID# 321].

Kiser does not contest that the victim at issue was a vulnerable victim. Rather, Kiser complains that the enhancement for vulnerable victim should not apply "due to [the Court] already having an enhancement for the victim's age." [DE 53, Page ID# 374]. Per Kiser, Clark was ineffective for failing to make such a challenge before the Court.

4

The record rejects such a notion. Kiser, through Clark, made this exact objection writing that adding the vulnerable victim enhancement due to the victim's age would be duplicative of the enhancement already in place due to the victim's age. [DE 32, Page ID# 222].

At the hearing, the Court asked the parties to address this objection. Clark again raised the objection. [DE 59, Page ID# 431-32]. The United States countered that it was not relying upon the victim's age but the fact that the victim was sleeping.

> I do think it would be inappropriate to apply this enhancement based on the age of the child. I think the case law has established that that is taken into account under the guidelines and, therefore, that a vulnerable victim enhancement based simply on the age of the child would not be appropriate to apply. However, that is not the basis of this enhancement in this situation. This situation was based on the physical condition of the child, which was the fact that she was sleeping. And again, the defendant admits that that was the case.

[DE 59, Page ID# 424]. When Clark realized the United States was not basing the enhancement on the victim's age, he pivoted to argue that the enhancement was duplicative of the caretaker enhancement given Kiser only had access to the victim when she was sleeping because he lived in the house. [DE 59, Page ID# 431-32]. In other words, Kiser's actions towards the victim when sleeping were only because he was a caretaker of the victim. Thus, per Clark, the Court should choose between either the vulnerable victim enhancement or the caretaker enhancement but not both. Ultimately, the Court rejected the argument concluding that assaulting the minor victim while she was sleeping was different than the issue of whether the assault occurred while the victim was in the custody of Kiser. [DE 59, Page ID# 435-36].

Returning to the habeas petition, Kiser's argument is that Clark was ineffective for failing to challenge the vulnerable victim enhancement. The record establishes Clark, both in writing and at the hearing, made every effort to challenge the application of the vulnerable victim

5

enhancement.[3] Unfortunately for Kiser, Clark's efforts were not successful. Under the *Strickland* standard, Clark's advocacy was far from deficient. Habeas relief is not found simply because Kiser did not like that his counsel lost the argument. *See Hodge v. Haeberlin*, 579 F.3d 627, 644 (6th Cir. 2009) ("Counsel does not fall below [*Strickland*] standard by failing to prevail when arguing a debatable point to the court"). On this ground, the Court should deny Kiser's petition.

### C.     CARETAKER ENHANCEMENT

Like with the vulnerable victim enhancement, Kiser's argument concerning the application of the caretaker enhancement ignores the record. Again, Clark made the objection, argued the issue with the Court, and the Court ruled against him. Kiser's habeas claim is without merit.

The caretaker enhancement applies a two-level enhancement "if the minor was otherwise in the custody, care, or supervisory control of the defendant." USSG § 2G2.1(b)(5) (2018). At sentencing, as Kiser now argues in his habeas petition, Clark argued that Kiser's relationship with the victim's mother was such that he could no longer be considered a caretaker as contemplated by the USSG. According to Clark, "the relationship [between Kiser and the victim's mother] had change qualitatively over time." [DE 59, Page ID# 429]. In support, Clark presented a letter from the victim's mother that the relationship between she and Kiser had substantially deteriorated. [DE 59, Page ID# 429-30]. The Court, noting that while the relationship may have deteriorated to some degree as suggested by the victim's mother, the harm to the victim occurred from December 2018 through June 2019 during which time Kiser was described akin to a stepfather to the victim. [DE 59, Page ID# 427-30]. Again, the record establishes that Clark raised the very issue Kiser now complains he should have raised, but he was unsuccessful in his efforts. Such conduct does not

---

[3] Clark could not challenge *the fact that* the victim was eight years old, nor *the fact that* she was asleep, both of which Kiser admitted to in his plea agreement. [DE 25 Page ID #66]. Thus, Clark challenged whether Kiser was in a caretaking role and whether the enhancements should be concurrently applied.

meet the burden in *Strickland* that counsel's actions fell below an objective standard of reasonableness. *See Hodge*, 579 F.3d at 644.

Kiser also raises the issue that Clark should have called the victim's mother to testify in person as opposed to having her submit a letter. Clark addressed this choice in his affidavit.

> A strategic decision was made not call [the victim's mother]. It is unusual for the mother of a child victim to support the abuser. While counsel has no reason to believe there has been any attempt by Mr. Kiser to witness tamper, counsel did not believe that the risk of appearance of impropriety would be wise at sentencing, especially when the government would have the burden of establishing that the SOC for "custody" should apply.

[DE 60-1, Page ID# 495]. Kiser and Clark may differ on the decision of whether to call the victim's mother as a witness as opposed to her submission of a letter. But Kiser must meet a higher burden to support his claim for ineffective assistance of counsel than a simple disagreement with counsel over strategy. A finding of deficiency requires the petitioner "prove that counsel's representation was not merely below average, but rather that it 'fell below an objective standard of reasonableness.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Courts "employ a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In fact, "[s]trategic decisions of defense counsel are 'virtually unchallengeable.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)); *see also Goldman v. Anderson*, 625 F.2d 135 (6th Cir. 1980) (stating that a failure to object, when it is a tactical decision by counsel, without more, will not provide a basis for habeas relief.) In the end, Clark's decision to rely upon a letter as opposed to live testimony was, as he said, a strategic decision. Kiser may disagree with that decision, but Clark's decision does not rise to meet *Strickland*'s burden. The Court should deny Kiser's petition on this ground.

**D.   DOWNWARD VARIANCE**

Like the prior two grounds, Kiser's third ground is rebutted by the record. [DE 53, Page ID# 365, 374]. Namely, Kiser argues that Clark "fail[ed] to supply example of similar sentences" [DE 53, Page ID# 365] and "failed to present [evidence] such as my lack of criminal history (a criminal history category of 1), lack of this crime being distributed on the internet, and lack of penetration." [DE 53, Page ID# 374]. Again, the record reflects that Clark, in fact, did seek a downward variance arguing every single one of these issues.

Prior to sentencing in this matter, Clark, on behalf of Kiser, filed a motion for downward variance. [DE 33]. In that motion, Clark made several arguments seeking a downward variance, including:

- Highlighting Kiser's lack of "significant criminal history" [DE 33, Page ID# 226];

- Provided evidence that a downward variance would be more consistent with other sentences in similar cases [DE 33, Page ID# 226, 232];

- Kiser's substance use disorder history [DE 33, Page ID# 227];

- The sexual abuse Kiser suffered as a child [DE 33, Page ID# 228];

- "[N]o evidence the images were ever distributed" [DE 33, Page ID# 228]; and

- Kiser's remorse for the crime [DE 33, Page ID# 229-30].

At the sentencing, Clark reiterated these arguments. [DE 59, Page ID# 446-47, 453-55]. For example, Clark emphasized Kiser's lack of criminal history [DE 59, Page ID# 446-47], compared at length similarly situated cases and their respective sentences [DE 59, Page ID# 447-48, 453-55], and noted the "de minimis" penetration [DE 59, Page ID# 455]. The Court, however, rejected the downward variance request.

8

As with the two prior grounds, Kiser's complaints about what Clark failed to do are not only rejected by the record but appear to be an attempt by Kiser to relitigate these issues. The record plainly demonstrates that Clark advanced every argument about which Kiser now complains. There is simply no basis to conclude that Clark's advocacy fell below an objective standard of reasonableness as required by *Strickland*. Accordingly, the Court should deny Kiser's petition on this third ground as well.

### III.   CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

In this case, reasonable jurists would not debate the denial of Kiser's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Kiser argues his trial counsel was ineffective for failing to challenge sentencing enhancements or arguing for a downward variance. The record before the Court clearly demonstrates that his trial counsel, in fact, made those very challenges for which Kiser now complains. The arguments, however, were unsuccessful. Simply because counsel loses arguments in no way suggests that counsel was ineffective and refutes any notion were never even made. Accordingly, the Court recommends

that a certificate of appealability be denied upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS** the District Court deny Kiser's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255. Specifically, the Court recommends that:

1) the District Court **DENY**, with prejudice, Kiser's § 2255 motion [DE 60]; and

2) the District Court **DENY** a certificate of appealability as to all issues.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), FED. R. CIV. P. 72(b), FED. R. CRIM. P. 59(b), and local rule, **within fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 27th day of March, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY